IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
STEPHEN M. STRADTMAN,         )
                              )
     Plaintiff,               )
                              )
          v.                  )      1:14CV1289 (JCC/JFA)
                              )
REPUBLIC SERVICES, INC.,      )
et al.,                       )
                              )
     Defendants.              )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on a Motion to Dismiss filed by the collective Defendants in this matter, Republic Services, Inc., Republic Services of Virginia, LLC (collectively "Republic"), and Ronald Krall (collectively "Defendants") [Dkt. 4]. The Court will grant the motion in part.

## I. Background[1]

This action arises from a once fruitful business relationship between two companies in the waste management industry that eventually deteriorated, leaving Plaintiff Stephen Stradtman ("Stradtman" or "Plaintiff") without a job.

On January 1, 2005, Stradtman became CEO of Otto

---

[1] In considering a motion to dismiss for failure to state a claim, as is the case here, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[.]" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Accordingly, the following facts, taken from Plaintiff's Complaint, are accepted as true for purposes of this motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

1

Industries North America, Inc. ("Otto"), a company that manufactures plastic containers for waste materials. (Compl. [Dkt. 8-3] ¶ 26.) Plaintiff was responsible for, inter alia, managing business operations and sales in the Commonwealth of Virginia. (Id.) During his first five years as CEO from 2005 until 2010, Plaintiff significantly increased Otto's profit margins and expanded its business in the east region. (Id. at ¶¶ 29-31). A large part of this success was due to the business relationship that grew over time between Otto and Republic, a waste collection service company, which had merged in late-2008 with Otto's major client, Allied Waste Industries, Inc. (Id. at ¶ 32.)

Notably, Stradtman reformulated a five-year contract with Republic -- the longest private contract Otto entered into since 2005. (Compl. ¶¶ 33-35.) By this time, Otto had gone from a company losing money "to a $100 million dollar company," due in large part to Otto's "booming business relationship with Republic, in particular the East Region of Republic (the 'East Region'). The East Region accounted for approximately 25% of the business between Otto and Republic, and approximately 10% of Otto's overall business." (Id. at ¶ 34.) Continuing into 2011, Plaintiff regularly received praise from Republic's regional executives and supervisors, including Defendant Ronald Krall, Republic's Senior Vice President of the East Region, who wanted

2

to continue to grow the relationship with Otto. (Id. at ¶ 36.) In one instance, Mr. Drew Isenhour ("Isenhour"), Republic's Area President, instructed all North Carolina divisions to buy from Otto. (Id. at ¶ 39.) Business was good, and it continued to grow. (Id. at ¶¶ 38, 42-46.) But by the end of 2011, the relationship between Otto and Republic, and specifically, between Stradtman and Republic, started to worsen.

In June of 2011, Stradtman was engaged to marry Ms. Jennifer Taylor ("Taylor"), Republic's Director for Municipal Sales in the East Region. (Compl. ¶ 41.) Three months later in September of 2011, Taylor filed an EEOC charge against Republic, alleging sexual harassment, gender discrimination, and retaliation for conduct that allegedly occurred between 2009 and 2011. (Id. at ¶¶ 47-48.) The same day Taylor filed the EEOC charge, Republic notified her that her employment with the company was terminated, effective September 23, 2011. (Id. at ¶ 49.) Unable to resolve the allegations, in October of 2011, Taylor filed a civil discrimination lawsuit against Republic and various Republic employees in Fairfax Circuit Court, which was subsequently removed to this Court. (Id. at ¶ 53.) Stradtman and Taylor married the same month. (Id. at 52.)

The business relationship between Otto and Republic began to suffer. Stradtman claims that Republic was retaliating against him for his wife's discrimination lawsuit by diverting

3

business away from Otto. (Compl. ¶ 78.) For example, the same month as the wedding, Christopher Synek ("Synek"), Republic's Executive Vice President of Sales, cancelled Republic's participation in an annual golf tournament due to Taylor's lawsuit, claiming he couldn't be seen with Stradtman, and that "lawsuits have unintended consequences." (Id. at ¶¶ 54-55.) A month later, during lunch with Isenhour, Stradtman learned that Otto orders were "being questioned," and that Krall's subordinates were getting quotes from Otto's competitors. (Id. at ¶¶ 57-58.) Republic employee Robert Formack was subsequently terminated because he refused to shift a $1 million order from Otto to an Otto competitor. (Id. at ¶¶ 60, 62-63.) When Stradtman attempted to remedy the situation in December of 2011, Synek promised to honor Republic's contract with Otto, but acknowledged that the relationship was now strained because of Taylor's lawsuit, and even went as far to try and resolve the lawsuit through conversations with Stradtman. (Id. at ¶¶ 64-65.)

Relations did not get any better between Stradtman and Republic in 2012. Republic, under the direction of Krall, continued redirecting orders and withholding business from Otto in the aggregate amount of $3 million. (Compl. ¶¶ 70-72, 74.) When Otto investigated the reason for lost Republic business in February of 2012, it found there were no quality, service, or

price issues.  (Id. at ¶ 80.)  Moreover, discussions were delayed regarding Otto's upgrade in status from a "Preferred Vendor" to a "Strategic Vendor," (id. at ¶¶ 68-69.), and the upgrade would be near impossible if Taylor's lawsuit was not resolved.  (Id. at ¶ 97.)

By April of 2012, efforts to repair the relationship with Republic had failed, and Stradtman advised Otto's Owner and Board of Directors that he had no choice but to resign as Otto's CEO, because Republic would continue to divert business away from Otto due to Taylor's lawsuit.  (Compl. ¶ 109.)  The loss of Republic's business had cost Otto $5 million by May of 2012, and Stradtman was in an "untenable position," because of the fiduciary duty he owed to Otto as the CEO.  (Id. at ¶¶ 111-112.)  On May 31, 2012, Stradtman was forced to resign from the position of Otto's CEO.  (Id. at ¶¶ 113-116.)  Sixty days later, Republic resumed regular orders from Otto, and Krall planned to attend the east region's meeting, because "he heard there was a new CEO" at Otto.  (Id. at ¶ 120.)

In December of 2013, Stradtman filed a lawsuit against Republic and Krall in Fairfax County Circuit Court, but did not serve each of the Defendants until September 29, 2014.  (Am. Notice of Removal [Dkt. 8] at 2.)  The same day they were served, the Defendants removed the matter to this Court, invoking diversity jurisdiction.  (Id.)  Stradtman brings three

5

counts: (1) tortious interference with contractual relations and business expectancies against all Defendants (Compl. ¶¶ 121-140.); (2) common law conspiracy against all Defendants (id. at ¶¶ 141-149.); and (3) negligent retention of employees (Ronald Krall) against the two Republic Defendants (id. at ¶¶ 150-170.). Stradtman asks for $20 million in compensatory damages and $30 million in punitive damages on each of the three counts. (Id. at 32.)

The Defendants now move to dismiss the Complaint. [Dkt. 4.] The motion is fully briefed and the Court heard oral argument of counsel on November 20, 2014. Thus, the motion is ripe for disposition.

## II. Standard of Review

In deciding a Rule 12(b)(6) motion, a court must be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citation omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

6

on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, [it] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Butler v. United States, 702 F.3d 749, 752 (4th Cir. 2012) (citations and internal quotation marks omitted). A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true, and must construe all allegations in favor of the plaintiffs. See Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).

### III. Analysis

As an initial matter, the Court is mindful that dismissal pursuant to Rule 12(b)(6) is disfavored. Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1471 (4th Cir. 1991) (citing 2A Moore's Federal practice, ¶ 12.07, p. 12-63.). Thus, the motion to dismiss will not be granted as long as sufficient facts are alleged to support an inference that plaintiff is entitled to the relief he seeks. Francis v. Giacomelli, 558 F.3d 186, 196-97 (4th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (additional citation omitted)). With this standard in mind, the Court will grant the motion in part, but only as to Counts Two and Three. Otherwise, the motion to dismiss will be denied and Count One will remain.

### A. Count One – Tortious Interference with Contract

Virginia common law recognizes a cause of action for tortious interference with contract rights or business expectancies. See Chaves v. Johnson, 335 S.E.2d 97 (Va. 1985). The necessary elements to establish a prima facie case are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. Dunlap v. Cottman Transmission Sys., LLC, 754 S.E.2d 313, 318 (Va. 2014) (quoting Chaves, 335 S.E.2d at 102) (internal quotation marks and additional citations omitted). If the contract is "at will," however, it must also be proven "that the defendant employed improper methods." Dunlap, 754 S.E.2d at 318 (internal quotation marks and citations omitted).

Here, the contractual relationship or business expectancy at issue is Stradtman's employment with Otto. (Compl. ¶¶ 126, 138.) Defendants contend, inter alia, that Count One fails to state a claim because "Stradtman has not alleged that the third party (Otto) terminated his employment relationship as a result of defendants' alleged interference," and moreover, Stradtman has not alleged that Defendants intended

8

to cause his employment to be terminated.[2]  (Defs.' Mem. [Dkt. 5] at 6.)  Even assuming Stradtman's contract was for at-will employment, the Court finds that he has sufficiently pled facts to support a claim for tortious interference with a contract expectancy.

Both sides rely on Judge Ellis's opinion in Taylor v. CNA Corp., 782 F. Supp. 2d 182 (E.D. Va. 2010) to support their argument for, or against, the proposition that Defendants' intentional interference caused the termination of Stradtman's employment with Otto.  (Defs.' Mem. at 7-10; Pl.'s Opp'n [Dkt. 10] at 7-9.)  Defendants argue that Stradtman's voluntary resignation from Otto is fatal to his claim in Count One because Virginia law requires the interfering party (Republic and Krall) to cause a third party (Otto) to terminate the business relationship with Stradtman.  (Defs.' Mem. at 7-8 (citing Rappahannock Pistol & Rifle Club v. Bennett, 262 Va. 5 (2001).)  Stradtman concedes that he resigned from Otto and was not terminated, but contends that he was "constructively discharged" and the Defendants intentionally acted to give him no other choice but to resign.  (Pl.'s Opp'n at 7-9.)

Even though "[i]t is axiomatic that a plaintiff cannot sustain a claim of tortious interference with business

---

[2] Defendants also argue that Count One should be dismissed because Stradtman did not allege that there was a competitive relationship between himself and Republic and because Stradtman did not allege that defendants employed any "improper methods" to interfere with his employment.  (Defs.' Mem at 6.)

expectancy when he willingly surrendered his right to those expectancies," CNA Corp., 782 F. Supp. 2d at 204, the Complaint alleges that Stradtman was "effectively left [with] no practical choice other than quitting," id.; see, e.g., Compl. ¶ 116 ("Mr. Stradtman <u>was forced to leave</u> his promised ownership interests in Otto, related equity compensation, and his annual bonuses.") (emphasis added).

Moreover, Stradtman's Complaint alleges facts that support each of the necessary elements for tortious interference with an at-will contract expectancy as compared to the Civil Virginia Model Jury Instruction Number 40.250. Specifically, the Court notes the following allegations:

(1) There was a contract expectancy between Stradtman and Otto; see, e.g., Compl. ¶¶ 26-27 ("Mr. Stradtman was hired as Chief Executive Officer ("CEO") of Otto effective January 1, 2005 . . . . At all times relevant hereto, Mr. Stradtman carried out his responsibilities in an exemplary manner, to the benefit of Otto.").

(2) There was a reasonable probability of future economic benefit to Stradtman from that contract expectancy; see, e.g. id. at ¶ 126 ("Stradtman had a virtual certainty of continued and significant future economic benefits in his employment with Otto, including salary, raises, commissions and employment benefits. Otto was in the process of expanding his

compensation package and extending the duration of his employment agreements.).

(3) Republic and Krall knew of this contract expectancy; see, e.g., id. at ¶ 124 ("In February 2011, at Republic's East Region Municipal Sales Meeting ([where] Mr. Stradtman had been invited to represent Otto as a presenter), Mr. Krall praised Otto's product, service and support of Republic's East Region, and publically stated to the group that he wished there were more vendors like Otto in the East Region.").

(4) Republic and Krall used improper methods to interfere with the contract expectancy; see, e.g., id. at ¶ 128 ("Republic and Mr. Krall employed improper methods including, but not limited to, violating Va. Code § 18.2-460 which prohibits any obstruction of justice . . . breaching its contract with Otto . . . defamatory allegations that Otto rather than Republic had not performed under the contract, efforts to discredit Mr. Stradtman and shift business away from Otto[.]").

(5) Republic and Krall intended to interfere with the contract expectancy; see, e.g., id. at ¶¶ 78-79 ("Republic engaged in these acts of retaliation against Mr. Stradtman, and therefore, indirectly against Ms. Taylor, because Ms. Taylor complained and then filed a lawsuit against Republic. This retaliation further affected Mr. Stradtman because it associated

11

him with Otto's lost business, as well as hurt his overall sales numbers, on which particular parts of his compensation were based.").

(6) It was reasonably certain that the business relationship would have continued in the absence of Republic and Krall's conduct; see, e.g., id. at ¶ 117 ("At the time of Mr. Stradtman's termination, his employment agreement had been extended through 2012 and Otto was in the process of expanding Mr. Stradtman's compensation package and completing another three year agreement.  Mr. Stradtman's discussions with Otto during this time came to a chilling halt.").

(7) Stradtman was damaged by the disruption of the contract expectancy; see, e.g., id. at ¶ 169 ("As a direct and proximate result of Republic Services' actions, Mr. Stradtman has suffered and continues to suffer injury, physical and emotional distress, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, medical expenses, other past pecuniary losses, future pecuniary losses, and other non-pecuniary losses.").

In accepting these well-pleaded allegations as true and in construing all allegations in favor of Stradtman, as the Court is required to do at this stage, the Court will find that

12

Stradtman sufficiently states a claim for relief for tortious interference with a contract expectancy under Count One. See Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). Because the Court is mindful that dismissal pursuant to Rule 12(b)(6) is disfavored, see Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1471 (4th Cir. 1991), this claim, and only this claim, shall remain.

### B. Count Two – Common Law Civil Conspiracy

In Virginia, "[a] civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." Glass v. Glass, 321 S.E.2d 69, 74 (Va. 1984) (citations omitted). However, "a common law claim of civil conspiracy generally requires proof that the underlying tort was committed." CNA Corp., 782 F. Supp. 2d at 204-205 (quoting Almy v. Grisham, 639 S.E.2d 182 (Va. 2007)) ("This is so because the gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means.") (internal quotation marks and additional citation omitted).

However, "[a] corporate entity, which acts only through its agents, cannot conspire with itself, so a conspiracy cannot exist if Defendants were agents of the same principle

13

acting within the scope of the agency." Phoenix Renovation Corp. v. Rodriguez, 461 F. Supp. 2d 411, 429 (E.D. Va. 2006) (citing Fox v. Deese, 362 S.E.2d 699, 708-709 (Va. 1987)), aff'd 258 F. App'x 526 (4th Cir. 2007). Also, "Virginia has not recognized the so-called 'personal stake' exception to this general rule when the conspiring agent has an independent stake in achieving the conspiracy's illegal objective." Phoenix Renovation Corp., 461 F. Supp. 2d at 429. The Fourth Circuit has applied the personal stake exception to questions of federal law in very limited circumstances, including federal antitrust litigation. See, e.g., Greenville Publ'g Co. v. Daily Reflector, Inc., 496 F.2d 391 (4th Cir. 1974). Thus, it is inapplicable here to claims brought under Virginia law.

Even though the underlying tort in Count One remains, Count Two will be dismissed because Krall, an agent of Republic, cannot conspire with Republic under the intracorporate immunity doctrine discussed above. In short, even if Krall's interest in getting himself dismissed from Taylor's sexual harassment lawsuit constituted an "independent stake" in achieving the conspiracy's illegal objective, such a theory is inapplicable to overcome the intracorporate immunity doctrine because it has not been recognized by the Supreme Court of Virginia, and only by the Fourth Circuit in very limited circumstances. Phoenix Renovation Corp., 461 F. Supp. 2d at 429. The Court declines to

indulge Stradtman's extension of this argument. Thus, Count Two will be dismissed.

### C. Count Three – Negligent Retention

Lastly, Stradtman brings count three against Republic for negligent retention of Krall, an agent/employee. (Compl. ¶¶ 150-170.) Virginia recognizes the tort of negligent retention. Se. Apartments Mgmt., Inc. v. Jackman, 513 S.E.2d 395, 397 (Va. 1999) (citation omitted.) "The test is whether the employer has negligently placed an unfit person in an employment situation involving an unreasonable risk of harm to others." Morgan v. Wal-Mart Stores E., LP, No. 3:10CV669-HEH, 2010 WL 4394096, at *3 (E.D. Va. Nov. 1, 2010) (citation omitted). Additionally, "the Virginia Supreme Court has determined that 'an unreasonable risk of harm' element requires the threat of serious and significant physical injury." Zaklit v. Global Linguist Solutions, LLC, No. , 2014 WL 3109804, at *14 (E.D. Va. July 8, 2014) (quoting Parker v. Geneva Enters., Inc., 997 F. Supp. 706, 713 (E.D. Va. 1997)).

Here, Stradtman alleges that Republic was negligent in retaining Krall after it learned that Krall was retaliating against Stradtman and "harming him in his business, profession and reputation," but does not allege a "threat of serious and significant physical injury," nor can he, based on the facts as

15

currently alleged in the Complaint.  Parker, 997 F. Supp. at 713.  Therefore, Count Three will be dismissed as well.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' motion to dismiss in part.  Counts Two and Three will be dismissed.  In denying the motion to dismiss as to Count One, the Court is guided by the Fourth Circuit's strong preference for resolving cases on their merits.  See United States v. Shaffer Equip. Co., 11 F.3d 450, 453 (4th Cir. 1993).

An appropriate Order shall issue.

|  |  |
|---|---|
| | /s/ |
| November 25, 2014 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |