IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| STEPHEN M. STRADTMAN | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) CA 1:14cv1289 (JCC/JFA) |
| REPUBLIC SERVICES, INC., *et al.*, | ) ) |
| Defendants. | ) ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS

Defendants Republic Services, Inc., Republic Services of Virginia, LLC, ("Republic Services") and Ronald Krall (collectively "Defendants"), by counsel, submit this Memorandum of Points and Authorities in Support of their Motion for Sanctions.

### INTRODUCTION

On April 10, 2015, Plaintiff's counsel waived marital privilege. Plaintiff's counsel then represented to the Court that she had not searched for responsive communications between Stephen Stradtman and his wife, Jennifer Taylor, but Plaintiff had, resulting in the production of a single e-mail. Plaintiff's counsel was therefore ordered to ensure an appropriate search was conducted personally by counsel and to produce responsive documents. On April 21, 2015, a single, additional e-mail was produced.

Defendants are, however, in possession of a number of responsive e-mails between Stradtman and Taylor, which were resident on the computer Taylor was ordered to produce in her litigation against the Defendants. Stradtman has not produced these e-mails. Plaintiff has therefore destroyed or is withholding responsive communications with his wife. If Plaintiff is withholding e-mails, he has violated the Court's April 10, 2015 Order. If he destroyed the emails he has spoliated evidence.

19669531v.1

## FACTUAL BACKGROUND

Republic Services is a national waste and recycling company. Compl. at ¶ 9. It and/or its predecessors have purchased trash and other carts from Otto Industries North America ("Otto"), since at least 2008. *Id.* at ¶¶ 32-33. Republic Services' cart purchases from Otto have, in various years, exceeded $20 million. *Id.* at ¶ 33.

Stradtman became Otto's CEO in approximately January, 2005. *Id.* at ¶ 26.

Jennifer Taylor was previously a Director of Municipal Sales for Republic Services. *Id.* at ¶ 41. Taylor and Stradtman met through their work for Republic Services and Otto, respectively, and became engaged in June 2011. *Id.* They were married in October 2011. *Id.* at ¶ 52.

Taylor filed an EEOC Charge against Republic Services in September 2011, and filed a lawsuit against the Defendants one month later. *Id.* at ¶¶ 47, 53. The case was removed to this Court in May 2012. Dkt. No. 1, Case No. 1:12-cv-00523-GBL-IDD.

On or about May 31, 2012, Stradtman voluntarily resigned his at-will employment as CEO of Otto. Compl. at ¶¶ 4, 26, 105, 109, 113, 116. He concedes that Otto did not want him to resign. *Id.* at ¶ 117. He nevertheless now claims that Defendants tortiously interfered with his employment relationship, reducing or cancelling cart orders in order to pressure him to pressure his wife, to drop her lawsuit against Defendants. *Id.* at ¶¶ 104, 121-140. Stradtman seeks more than $50 million. *Id.* at ¶ 171.

On September 25, 2012, Stradtman sued the Defendants in the U.S. District Court for the District of Columbia. Dkt. No. 1, Case No: 1:12-cv-01593-KBJ.

On December 21, 2012, in response to a Motion to Compel from Defendants, Taylor was ordered to produce her computer for forensic inspection. Dkt. No. 174, Case No. 1:12-cv-00523-GBL-IDD.

On May 22, 2013, Stradtman voluntarily dismissed his lawsuit in the U.S. District Court for the District of Columbia. Dkt. No. 10, Case No: 1:12-cv-01593-KBJ.

On February 27, 2015, Defendants filed a Motion to Compel in this case, seeking, among other things, a marital privilege log for all communications between Stradtman had Taylor which had been withheld. Dkt. No. 34. In his Opposition, Stradtman stated that no such log was required, because "<u>since issues relating to Otto arose, any and all communications between Mr. Stradtman and Ms. Taylor regarding this matter are covered by other privileges in addition to the marital privilege</u>." Dkt. No. 42, at 8. (emphasis added) Based on Stradtman's representation, this portion of the Motion to Compel was denied. Dkt. No. 49.

On March 25, 2015, Defendants' counsel again raised discovery issues with Stradtman's counsel:

> First, there are several documents in your production that have been redacted without explanation. For example, many of these emails 'to' and 'from' lines have been redacted. After reviewing the recent Otto productions it is apparent that many of these emails are merely Mr. Stradtman forwarding emails from his Otto email account to his AOL.com email account. That is not the proper basis of a redaction. Please provide unredacted versions of these emails. Will you agree to provide unredacted versions?
>
> Second, there are numerous instances on the Jennifer Taylor privilege logs where she is forwarding Otto emails to your firm. Many of these emails were recently produced by Otto. It is clear that they were provided to Mr. Stradtman, yet later were included on the Taylor Privilege logs because they were forwarded to you by Jennifer Taylor. With respect to these documents, we renew our request that you provide a marital privilege log which includes, but is not limited to all Republic and Otto documents that were forwarded from Mr. Stradtman to Ms. Taylor. Will you produce a log of these communications? If it is your position these documents no longer exist, then why do they no longer exist?

A copy of counsel's March 25, 2015 e-mail is attached as Exh. 1. Additionally, a copy of one of the redacted e-mails, PL000870, is attached as Exhibit 2.[1]

The following day, Plaintiff's counsel provided a chart, offering explanations for the redactions. A copy of Plaintiff's counsel's e-mail is attached as Exh. 3. With respect to the document labeled PL000870, Plaintiff's counsel stated that the redaction was necessary because the e-mail was a: "**Forward from SS to Jennifer Taylor with email message**; forward from SS to counsel with additional email message." Exh. 3. (emphasis added)

On April 3, 2015 Defendants filed another Motion to Compel, as well as a Motion seeking *in camera* review of an email in order to determine the applicability of any privilege. Dkt. Nos. 73, 76.

On April 9, 2015, Stradtman produced a single e-mail with his wife. A copy of the e-mail is attached as Exh. 4. In the e-mail, Stradtman first forwards an e-mail he received from Tim Phanco, a former Otto employee who now works for Stradtman and who is an important witness in this case, from his work e-mail account to his AOL e-mail account, on March 5, 2012. Later that day, Stradtman then forwards the e-mail to his wife, from his AOL account. *Id.* This e-mail was printed from an AOL e-mail account on April 3, 2015.

Argument on Defendants' Motions was heard on April 10, 2015.

The discussion between the Court and Plaintiff's counsel is instructive, so it is quoted at length:

*Court: ...What about the marital privilege log? What--*

*Ms. Brown: So--*

*Court: Are you not claiming marital privilege, is that?*

*Ms. Brown: Both Jennifer and Steve testified--both Ms. Taylor and Mr. Stradtman testified yesterday extensively about their discussions with each other. They did the same*

---

[1] PL000870 is an e-mail exchange between Stradtman and a former Republic Services procurement executive, Tom Piersa.

4

*thing in Ms. Taylor's case. The memorandum that Mr. Stradtman prepared for counsel, if you look at it, is not--doesn't involve Ms. Taylor. She wouldn't have any reason to log that on a privilege log of her own. The issue in this case is that outside counsel and their clients, for purposes of the litigation, didn't record a privilege log between themselves. So I didn't get a privilege log from Hogan & Hartson[2], Seyfarth Shaw or DiMuro Ginsberg or any of the other--*

Court: *Let's--are you asserting a marital privilege on any of the documents in this case?*

Ms. Brown: *No. We're not redacting documents for the marital privilege.*

**Court: Are you withholding documents--**

**Ms. Brown: No.**

**Court: ..based on the marital privilege?**

**Ms. Brown: No.** *That's--that was my point--*

Court: *Well, that--I just need for you to make that representation that there's--you're not asserting the marital privilege for any documents or any redactions. Is that correct?*

Ms. Brown: *That's correct.*

Court: *Okay. All right. Well, then that takes care of the marital--there's no need for a marital privilege log because she's saying she's not asserting any marital privilege.*

Mr. DiMuro: *I was going to wait for a reply, but one comment to that?*

Court: *Okay.*

Mr. DiMuro: *We've not received one document e-mail communication between Taylor and Stradtman personally. Is that correct?*

Mr. DiMuro: *We received something yesterday. It is inconceivable that husband and wife with MBAs aren't mailing each other or texting each other.*

Ms. Brown: *And we gave them a privilege log created by I-Discovery in Jennifer Taylor's case. That was my point. We had to log everything. If there was something on that log that they think we did not produce, that's why I gave it over to my--we haven't withheld anything for purposes of marital privilege.* **Neither Ms. Taylor nor Mr. Stradtman have withheld any piece of their testimony as to their communications with each other.**

---

[2] Hogan & Hartson has never represented Defendants in either the Taylor litigation or this case.

5

*Court: Well--*

*Ms. Brown: --and both testified extensively.*

**Court: --have you searched your client's e-mails to find out whether he's been e-mailing with his wife about this lawsuit?**

**Ms. Brown: I did not personally search. Mr. Stradtman searched.**

*Court: Well, if--if in fact he's been e-mailing about this lawsuit?*

*Ms. Brown: I did not search personally. Mr. Stradtman searched.*

*The Court: Well, if--if in fact he's been e-mailing about this lawsuit relating to issues that are responsive to a document request, you haven't searched for that or produced it?*

*Ms. Brown: No. Mr. Stradtman searched for that, and he has produced it. You asked me--*

*Court: No, no. It's your obligation to make sure that discovery is done appropriate on this case. You don't hand it off to your client and say you go to this and I'm not going to look around and see whether you did it right or not.*

*Ms. Brown: I didn't hand it off to Mr. Stradtman. We also had knowledge of what the documents available would be, which we reviewed and produced. And the only redactions that we have from those documents are the ones that I describe. I didn't hand off my discovery responsibilities in any fashion to Mr. Stradtman.*

*Court: Well, then, tell me what it is when you said that he did the review of his documents.*

*Ms. Brown: He--*

*Court: You let him pick and choose what documents it was that he then gave to you to then either produce or not produce?*

**Ms. Brown: No. Mr. Stradtman--my understanding, Mr. Stradtman gave me everything. There was a search. He kept a--he would say--he will then say that he kept a file on these specific documents and produced the file.** *Because, Your Honor, this comes back to the point that we have today. The question that's been asked is, when did the relationship arise between the parties or between Mr. Stradtman and I.*

*Court: I'm trying to get this marital privilege. You're saying you're not asserting it.*

*Ms. Brown: No.*

*Court:* And so if you're not asserting a marital privilege and he communicates with his wife and that communication is responsive to a document request, then it needs to be produced because you're not asserting any privilege.

*Ms. Brown:* Agreed.

*Court:* Okay. And I've heard that there's been one e-mail between him and his wife that you have produced. And you're going to represent to the Court that all of his e-mails have been looked at, whether it's in a particular file or not, but all e-mails have been reviewed to see whether they're responsive to a document request, including e-mails to his wife and from his wife to him?

*Ms. Brown:* **I have reviewed documents in paper copy. I did not go into his e-mail account and review the specific documents in his e-mail account. That I did not do.**

*Court:* And is he--

*Ms. Brown:* He produced them to me in paper copy.

*Court:* --being instructed not to delete any e-mails to--

*Ms. Brown:* Yes, he has.

*Court:* --his wife?

*Ms. Brown:* Absolutely.

*Court:* **I mean, not just-- I mean, e-mails to his wife that would include this lawsuit.**

*Ms. Brown:* **Yes. And in fact, was keeping those.**

\* \* \*

*Court:* All right. Ms. Brown, you need to go back--

*Ms. Brown:* Sure.

*Court:* --and double check what you've done in this matter with the understanding that you cannot be asserting the marital privilege now. That is waived.

*Ms. Brown:* I'm clear on that.

*Court:* **And if there are responsive documents that are there, whether they be in his personal folder relating to communications with his wife that would be responsible or responsive, then they need to be produced.**

*Ms. Brown:* **I hear you, Your Honor. I don't disagree.**

7

Exh. 5, April 10, 2015 Hearing Tran. at 25-31 (emphasis added)

Plaintiff's counsel also represented at the hearing that an attorney client relationship existed as of at least March 2012, if not December 2011. *Id.* at 31-33, 41-44.

On April 21, 2015, a single, additional e-mail was produced. A copy of the e-mail with forwarding communication is attached as Exh. 6. The e-mail is dated July 18, 2011, and in it, Stradtman forwards to Taylor an e-mail he received from one of the Defendants in this case, Ronald Krall. *Id.* The e-mail is sent from Stradtman's then work e-mail address. *Id.* A part of the document has been redacted based on attorney client privilege. *Id.* Based on the redaction and the lack of an AOL or other ISP print stamp, it appears this e-mail was printed from Stradtman's counsel's computer.

On April 23, 2012, Stradtman sent Taylor an e-mail from his AOL e-mail account. A copy of the e-mail is attached as Exh. 7. The subject line is "Piersa wrote back today (thought I would get a call) surprising to say the least." *Id.* The text states:

> **I think Tom stepped into my trap.**[3] After our call he had to come back to me. He could either come back and say there was nothing going on, which I could question, or he could say there was something going on which would have been suicide.
>
> See below how mice (sic) he was and see my next response to see if he can now put up or shut up. whats (sic) your prediction?

*Id.* (emphasis added)

Stradtman forwarded the e-mail to Taylor again on July 27, 2012. *Id.*

Stradtman has never produced this e-mail, nor any of the numerous other responsive e-mails between him and Taylor which were resident on Taylor's computer when it was ordered produced in discovery in her litigation against Defendants.

---

[3] As the Court is aware, it is Defendants' belief that Plaintiff manufactured the claims in his lawsuit. *See, e.g.*, Dkt. No. 77 at pg. 2; Dkt. No. 77, Exh. 1, "I will need to try and force my termination…"

8

19669531v.1

Stradtman did produce, however, a redacted version of his e-mail communication with Mr. Piersa, PL000870. The redacted version deletes Stradtman's statement to his wife, that Mr. Piersa had "stepped into my trap." *See,* Exh. 3. And Plaintiff's counsel's chart specifically states that a communication between Stradtman and Taylor has been redacted. *Id.*

On April 23, 2015, a meet and confer was conducted by telephone regarding these issues. Stradtman's counsel represented that she looked for e-mails on Stradtman's AOL account, but did not find any that were responsive. Plaintiff's counsel followed with an e-mail that evening, stating she would conduct another search. A copy of Plaintiff's counsel's e-mail is attached as Exh. 8.

## ARGUMENT

### A. Legal Standards.

**Spoliation.** "Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Id.* at 591. A party that anticipates litigation is "under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *Samsung Elecs. Co. v. Rambus, Inc.*, 439 F. Supp. 2d 524, 543 (E.D. Va. 2006), *vacated on other grounds*, 523 F.3d 1374 (Fed. Cir. 2008).

"[S]poliation is not a substantive claim or defense but a 'rule of evidence,' and thus is 'administered at the discretion of the trial court.'" *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995)). "When a party destroys, alters or fails to preserve property for use as evidence in reasonably foreseeable litigation such that the judicial process is disrupted," a district court may use its inherent power to control the judicial process to determine an appropriate sanction to the extent necessary to redress conduct which disrupts the judicial process. *King v. Am. Power Conversion Corp.*, 181 Fed. App'x 373, 376 (4th Cir. 2006) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45046 (1991)).

This Court follows a two-step analysis to determine whether and how to sanction a party for spoliating evidence. The first step determines whether spoliation occurred. *Silvestri*, 271 F.3d at 591-92. The second step requires the Court to decide what sanctions are appropriate for the spoliation given all the facts and circumstances of the case, including the spoliator's state of mind, the prejudice caused by the spoliation, and the need for the Court to deter spoliation and prevent the spoliation from creating a risk of an erroneous judgment. *Silvestri*, 271 F.3d at 593-94. Sanctions may include, *inter alia*, dismissal or judgment by default, preclusion of evidence, an adverse inference instruction, and/or an assessment of attorneys' fees and costs. A district court enjoys broad discretion in selecting the appropriate sanction, which should serve the purpose of both "leveling the evidentiary playing field and . . . sanctioning the improper conduct." *Silvestri*, 271 F.3d at 590 (quoting *Vodusek*, 71 F.3d at 156).

**Rule 37.** This Court also has the authority to issue sanctions under Federal Rule of Civil Procedure 37 and Local Rule 37, where any party or attorney has failed to comply with any provisions of Rule 37. Fed. R. Civ. P. 37(b)(2); *In re Fisherman's Wharf Fillet,*

*Inc.*, 83 F. Supp. 2d 651, 665-66 (E.D. Va. 1999) (Rule 37 aims at imposing costs on counsel and parties who frustrate the discovery process and occupy the Court's time with needless disputes).

Rule 37(b)(2), pertaining to sanctions for failure to comply with a court order, provides:

> **(A) For Not Obeying a Discovery Order.** If a party or a party's officer, director, or managing agent-or a witness designated under Rule 30(b)(6) or 31(a)(4)-fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Under Rule 37, in awarding sanctions, courts may consider: (a) whether the noncomplying party acted in bad faith; (b) the prejudice the noncompliance has caused the adversary; (c) the need for deterring the particular type of noncompliance; and (d) the effectiveness of less drastic sanctions than dismissal. *See Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977); *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40–41 (4th Cir. 1995).

**Inherent Authority.** This Court also "has the inherent authority in appropriate cases to . . . impose . . . sanctions against a litigant or a member of the bar who has acted in bad faith, vexatiously, wantonly, and for oppressive reasons." *Sanford v. Commonwealth of Va.*, 689 F. Supp. 2d 802, 805 (E.D. Va. 2010) (quoting *Williams v. Family Dollar Servs.*, 327 F. Supp. 2d 582, 585 (E.D. Va. 2004)). The court's inherent authority arises "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the

11

orderly administration of justice or undermines the integrity of the process." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). "[U]nlike the rule-based and statutory authorities such as Rule 11, Rule 37, and § 1927, which concern themselves with specific types of misconduct[,]" a court's inherent authority to impose sanctions "covers every type of litigation misconduct . . . ." *Id.*; *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 458 (4th Cir. 1993) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). Courts have "considerable discretion" in choosing the appropriate sanction under this inherent authority and may, for example, dismiss claims, enter default judgment, and award attorneys' fees and costs. *See, e.g., Shaffer Equip.*, 11 F.3d at 461–62; *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 285 (E.D. Va. 2001).

In determining an appropriate sanction under its inherent authority, courts may consider (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. *Shaffer Equip. Co.*, 11 F.3d at 462–63.

### B. Stradtman Failed To Preserve, Destroyed Or Is Withholding Evidence.

Stradtman's wife, Jennifer Taylor has been litigating against Defendants since 2011 in a suit in which Stradtman was identified as a witness and in which she sought his damages for resigning from Otto. Stradtman himself has been litigating against Defendants since September 2012. And in each of their respective cases, they have asserted that Defendants cancelled or redirected cart orders in order to pressure Stradtman to pressure Taylor, to settle her lawsuit. Yet, Stradtman asks the Court and Defendants to believe that

over the course of nearly four years of litigation, there have been only a scant few e-mail exchanges between them relating to his lawsuit. Stradtman represents that there have been no texts, no e-mails, no recorded communications of any kind, except for the two e-mails produced on April 10 and 21, 2015, respectively.[4] Stradtman's claims defy all logic and common sense and in fact, are demonstrably false.

Resident on the computer Taylor was ordered to produce in discovery in her litigation against Defendants, are a number of e-mails between Stradtman and Taylor, relevant to this case. Most are e-mails in which Stradtman has forwarded communications from others on to Taylor, without significant comment. Some, however, like Stradtman's e-mail telling his wife that Mr. Piersa fell into his "trap," could have a significant impact on this case. Additional examples of responsive e-mails not produced are attached as Exh. 9.

Regardless of their ultimate impact, however, it is clear that based on their existence alone, Stradtman has destroyed or is withholding evidence. Indeed, the e-mail Stradtman produced on April 9, 2015, containing an e-mail communication from March 2012[5], was printed on April 3, 2015. Stradtman therefore unquestionably still has *some* e-mails between himself and his wife--in electronic form[6]--dating from at least March 2012, and he cannot be heard to now claim that all e-mails from that time period were lost, inadvertently

---

[4] Following Plaintiff's counsel's representation on April 23, 2015 that more than two e-mails between Taylor and Stradtman had been produced, Defendants' counsel went back through Plaintiff's entire document production--more than 10,000 pages. It appears that three responsive e-mails between Stradtman and Taylor were in the production.

[5] Stradtman sent the Piersa "trap" e-mail to Taylor in April 2012, and again in July 2012. The e-mail that was printed on April 3, 2015 and produced on April 9, 2015, is from March 2012.

[6] There has been no representation whether Stradtman and/or his counsel searched Taylor's e-mail account for responsive e-mails.

19669531v.1

destroyed, or that he no longer has access to them. He has either destroyed e-mails or continues to withhold them.

Moreover, Stradtman and his counsel have failed to provide any explanation for the fact that no electronic communications between him and his wife have been produced, occurring after 2012--save for a single 2013 e-mail in which Stradtman forwards an apartment lease agreement to his wife. It is simply impossible to believe, particularly in light of the false representations which have been made, that no such communications exist or existed. Stradtman's counsel has not filed a supplemental response to Defendants' document requests indicating that she conducted the review ordered by the Court.

### C. Stradtman Has Defied The Court's Order.

In response to the Court's order to produce responsive documents, Stradtman produced a single e-mail, despite undisputed evidence that other such e-mails exist. If Stradtman has not destroyed e-mails or failed to preserve them, he has defied the Court's Order.

Moreover, PL000870, makes clear that Stradtman's counsel was aware of the Piersa "trap" portion of PL000870, redacted it, and then failed to produce it following waiver of the marital privilege and the Court's order that all responsive e-mails be produced. Plaintiff's counsel's chart indicates that the portion of the Piersa e-mail in which Stradtman forwards it to his wife has been redacted. Yet, in direct defiance of the Court's Order, an unredacted copy of that e-mail, PL000870, has not been produced.[7]

---

[7] If Plaintiff's counsel now claims that she did not redact and refuse to produce the Piersa "trap" language, and that an unredacted PL000870 contains a different communication between Stradtman and Taylor, this necessarily means that Stradtman deleted or is withholding his "trap" comment to his wife.

14

19669531v.1

Stradtman did not bother to offer any explanation for the production of only a single additional e-mail following the Court's Order to produce. Instead, it appears that Stradtman seeks to use the reliance the Court places in the representation of counsel regarding discovery efforts, to avoid his discovery obligations. He apparently assumes that his counsel will simply tell the Court that searches have been conducted and that all documents have been produced. Of course, the system would cease to function if courts could not, with some degree of confidence, rely on the representations of counsel regarding discovery issues. In fact, but for the fact that Taylor was ordered to produce her computer as the result of a discovery dispute, that is exactly what would have happened here.[8] Now, however, the April 10, 2015, representations that searches had been conducted and all documents produce, simply reinforce the need for sanctions.

At the hearing, Stradtman's counsel represented that (a) Stradtman had searched his e-mail accounts; (b) kept a file of responsive e-mails; (c) specifically saved e-mails relating to this suit; (d) produced that file to his counsel; and (e) Stradtman was not withholding any documents. Yet, these representations are demonstrably false. And the April 3, 2015 print date makes clear that additional e-mails must either exist in electronic form or have been destroyed. The Piersa "trap" e-mail alone makes this clear. Stradtman has either destroyed evidence or he has violated the Court's April 10, 2015 order.

---

[8] Numerous representations have been made regarding communications between Stradtman and Taylor: (1) "all communications between Mr. Stradtman and Ms. Taylor regarding this matter are covered by other privileges in addition to the marital privilege."; (2) no communications between Stradtman and Taylor are being withheld; (3) Stradtman saved all responsive communications, created a file, and produced that file to counsel; and (4) counsel reviewed that file and produced documents. These representations, now shown to be false, serve only to demonstrate that Plaintiff has attempted to avoid his discovery obligations and, in so doing, has actually demonstrated culpability, blameworthiness and bad faith.

15

19669531v.1

### D. <u>Sanctions Are Warranted.</u>

An evidentiary hearing may be required to determine what happened to the e-mails and why, but Defendants submit that a hearing is not necessary to impose sanctions. Here, it is clear that Stradtman was under an obligation to preserve information and there are numerous responsive communications which have not been produced, despite a Court Order directing that such production occur. Sanctions are appropriate.

Defendants submit that appropriate sanctions may include: (1) an adverse inference instruction based on Plaintiff's destruction of evidence; (2) an order prohibiting Plaintiff from rebutting Defendants' evidence that he manufactured his lawsuit; (3) an order directing Stradtman to provide access to his e-mail accounts and/or computer for forensic inspection by an expert of Defendants' choosing; and (4) assessment of attorneys' fees and costs.

Defendants also ask that the Court order that Stradtman and his counsel provide declarations clearly identifying the computers and email systems Stradtman used for communications with his wife from the October 2011 to the present and for storage of same, whether he destroyed or deleted such communications and under what circumstances the emails were destroyed or deleted and setting forth all efforts in detail to meet the Court's order of April 10, 2015 to produce communications between Stradtman and Taylor after the waiver of the marital privilege. Defendants also ask, depending on the opposition filed Stradtman to this motion, that the Court consider permitting the deposition of Stradtman to be re-opened on these matters at his expense.

19669531v.1

## CONCLUSION

Stradtman destroyed or is withholding responsive documents. Sanctions should be imposed.

April 24, 2015                    Respectfully submitted,


By: /s/ Christine M. Costantino
    Christine M. Costantino, Va. Bar No. 86986
    ccostantino@seyfarth.com
    Raymond C. Baldwin (admitted *pro hac vice*)
    rbaldwin@seyfarth.com

    SEYFARTH SHAW LLP
    975 F Street, N.W.
    Washington, DC 20004
    Telephone: 202.463.2400
    Facsimile: 202.828.5393

    Bernard J. DiMuro (VSB #18784)
    bdimuro@dimuro.com
    Jonathan R. Mook (VSB #19177)
    jmook@dimuro.com
    M. Jarrad Wright (VSB #68814)
    mjw.right@dimuro.com

    DIMURO GINSBERG, P.C.
    1101 King Street, Suite 6.10
    Alexandria, VA 22314-2956
    Telephone: 703.684.4333
    Facsimile: 703.548.3181

19669531v.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2015, a true and correct copy of foregoing Memorandum of Points and Authorities in Support of Motion for Sanctions was served via ECF on:

> Carla D. Brown
> CHARLSON BREDEHOFT COHEN & BROWN, P.C.
> 11260 Roger Bacon Drive, Suite 201
> Reston, Virginia  20190
> *cbrown@cbcblaw.com*

By:  / s /  Christine Costantino
Christine Costantino (VSB # 86986)
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC  20004
Telephone:  202-463-2400
Facsimile:  202-828-5393
ccostantino@seyfarth.com

*Counsel for Defendants*