IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| STEPHEN M. STRADTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14cv1289 (JCC/JFA) |
| | ) | |
| REPUBLIC SERVICES, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants Republic Services, Inc., Ronald Krall, and Republic Services of Virginia, LLC's (collectively "Defendants") Objections to Magistrate Judge John F. Anderson's April 10, 2015 Order. [Dkt. 121.] For the following reasons, the Court will overrule the objections.

**I. Background**

Plaintiff Stephen M. Stradtman ("Stradtman") claims that Defendants tortiously interfered with contractual relations and business expectancies regarding his former employment as the Chief Executive Officer ("CEO") of Otto Industries North America, Inc. ("Otto"). (Compl. [Dkt. 1-3] at ¶¶ 121-140.) In general, Stradtman claims that Defendants caused his resignation from Otto in retaliation for a discrimination lawsuit that Stradtman's wife, Jennifer Taylor ("Taylor") had filed against

1

Defendants. (*See generally id.*)

During discovery, Defendants moved to compel communications prior to September of 2012 between Stradtman and Charlson Bredehoft Cohen Brown & Jones P.C. ("Charlson Bredehoft"), the law firm that represented Taylor in her lawsuit and currently represents Stradtman in this lawsuit. (Defs.' Mot. to Compel [Dkt. 73] at 1.) Stradtman opposed, arguing that the communications were protected by the attorney-client privilege. (Pl.'s Opp. [Dkt. 83] at 4-5.) After considering the written briefs and hearing oral argument on the motion, Judge Anderson denied the motion to compel, finding that there was an attorney-client relationship between Stradtman and Charlson Bredehoft beginning in the spring of 2012. (4/10/15 Order [Dkt. 101].) Defendants timely noted their objection to that Order pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636. [Dkt. 121.] Having been fully briefed and argued, this motion is ripe for disposition.

## II. Legal Standard

Rule 72(a) of the Federal Rules of Civil Procedure allows a magistrate judge to hear and decide non-dispositive motions. Rule 72(a) also permits a party to submit objections to a magistrate judge's ruling on such motions, like discovery orders. Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); *Fed. Election Comm'n v. The Christian Coal.*, 178

F.R.D. 456, 459-60 (E.D. Va. 1998) (citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)).

Only if a magistrate judge's decision is "clearly erroneous or contrary to law" may a district judge modify or set aside any portion of the decision. Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A). The alteration of a magistrate judge's order is "extremely difficult to justify." *Bruce v. Hartford*, 21 F. Supp. 3d 590, 593 (E.D. Va. 2014) (citing 12 Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 3069 (2d ed. 1997)).

The "clearly erroneous" standard applies to questions of fact. In applying this standard, a reviewing court will not reverse a lower court's findings of fact "simply because we would have decided the case differently." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation and internal quotation marks omitted). "Rather, a reviewing court must ask whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed." *Id.* (citation and internal quotation marks omitted). The "clearly erroneous" standard is therefore deferential. *The Christian Coalition*, 178 F.R.D. at 460.

Where pure questions of law are involved, "'that review is plenary under the 'contrary to law' branch of the Rule 72(a) standard.'" *HSBC Bank USA, Nat'l Ass'n v. Resh*, No.

3:12cv668, 2014 WL 317820, at *7 (W.D. Va. Jan. 28, 2014) (citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F. 3d 10, 15 (1st Cir. 2010) (collecting cases)). "'This means that, for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and [a] *de novo* standard.'" *Id.* (citing *PowerShare*, 597 F. 3d at 15). Therefore, the Court will review the factual portions of the magistrate judge's order under the clearly erroneous standard but will review the legal conclusions *de novo*.

### III. Analysis

Defendants seek a review of Judge Anderson's ruling that an attorney-client privilege existed between Stradtman and Charlson Bredehoft prior to September 2012. (Defs.' Mem. in Supp. [Dkt. 121] at 1.)

> The attorney-client privilege applies only if:
>
> 1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

4

*Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (citations and internal quotation marks omitted). The issue before Judge Anderson was whether Stradtman could be considered a client of Charlson Bredehoft in the spring of 2012.

The person seeking to invoke the attorney-client privilege must prove that he is a client or that he affirmatively sought to become a client. *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 340 (4th Cir. 2005). "'The professional relationship . . . hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.'" *Id.* (citing *United States v. Evans*, 113 F.3d 1457, 1465 (7th Cir. 1997)). An individual's subjective belief that he is represented is not sufficient to create an attorney-client relationship. *Id.* (citing *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997) ("[W]e know of no authority . . . holding that a client's beliefs, subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one."); *United States v. Keplinger*, 776 F.2d 678, 701 (7th Cir. 1985) ("We think no individual attorney-client relationship can be inferred without some finding that the potential client's subjective belief is minimally reasonable.")). Rather, the putative client must show that his subjective belief that an attorney-client

5

relationship existed was reasonable under the circumstances. *Id.*

Judge Anderson's factual determination that Stradtman had a subjective belief that he was a client of Charlson Bredehoft was not clearly erroneous.  Judge Anderson considered the substance of a March 22, 2012 email from Stradtman as well Charlson Bredehoft's attempt to retract the production of that email to opposing counsel after it was inadvertently disclosed by Stradtman's attorney.  The March 22 email contains "privileged" in the subject line (albeit misspelled). (Hr'g Tr. [Dkt. 108] at 57.)  In the email, Stradtman discusses filing a complaint and strategy about a potential case with a Charlson Bredehoft attorney. (*Id.*)  As Judge Anderson noted, such a discussion about legal strategy is evidence that Stradtman believed he was represented by Charlson Bredehoft. (*Id.*)

Judge Anderson's finding that Stradtman's subjective belief was reasonable under the circumstances is also well-supported.  First, Judge Anderson relied on Stradtman's counsel's representation that Charlson Bredehoft gave Stradtman a retainer agreement in April 2012. (Hr'g Tr. at 42.)  Members of the bar of this Court are bound by a duty of candor to the tribunal, and judicial reliance on such representations is appropriate.  *See* E.D. Va. Local Rule 83.1(I) (adopting Virginia's professional ethics rules).  Additionally, it appears

6

that there were on-going conversations between Charlson Bredehoft and Stradtman about Stradtman's case at the time Charlson Bredehoft gave him the retainer agreement. (*See* Hr'g Tr. at 42 [PLAINTIFF'S COUNSEL]: The retainer agreement with our firm is proffered to Mr. Stradtman in the April [2012] time period, and that's after he had lots of communications or consultations or thoughts about what the strategy would be.") Though the retainer agreement was signed by a representative of Charlson Bredehoft on April 16, 2012 and by Stradtman on July 23, 2012, it is possible that an attorney-client relationship existed before July 23, 2012. ((Pl.'s Opp., Ex. 3, at 3.)[1] "Under the law, attorney-client relationships arise out of substance and intent, even in the absence of a written contract." *Am. Sci. and Eng'g, Inc. v. Autoclear, LLC*, 606 F. Supp. 2d 617, 623 (E.D. Va. 2008) (citation and internal quotation marks omitted); *see also* Restatement (Third) of The Law Governing Lawyers § 14 ("A relationship of a client and lawyer arises when a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person and . . . the lawyer manifests to the person consent to do so."). Here, both Stradtman and Charlson Bredehoft manifested an intent to form an attorney-client relationship through their actions –

---

[1] According to Defendants, the first time Stradtman produced a retainer agreement was in opposition to the instant motion. (Defs.' Reply [Dkt. 146] at 10.)

Stradtman in discussing legal strategy and Charlson Bredehoft in signing a retainer agreement and providing the same to Stradtman.

Second, in an attempt to retract the inadvertent disclosure of the March 22 email, Stradtman's counsel identified it to opposing counsel as a memorandum "discussing legal advice [Stradtman] received" from Charlson Bredehoft. (Pl.'s Opp. [Dkt. 145] at 5.)  Though Judge Anderson ultimately found that any privilege as to the March 22 email had been waived because Stradtman's counsel failed to take reasonable steps to prevent or rectify the disclosure, (see Hr'g Tr. at 40),[2] this lends support to the idea that it was reasonable for Stradtman to believe that he was a client of Charlson Bredehoft, since Charlson Bredehoft believed it as well.[3]

Finally, the Court notes that Taylor's lawsuit was filed in April 2012.  (Hr'g Tr. at 44.)  In that lawsuit, which was eventually removed to this Court, Taylor unsuccessfully sought damages for Stradtman's legal harms.  (Id.)  Thus, it would not be unreasonable for Stradtman to think that Charlson Bredehoft, which represented Taylor in her lawsuit, was also representing his legal interests.  Therefore, Judge Anderson's

---

[2] Defendants do not challenge this ruling.
[3] The email from Stradtman's counsel to opposing counsel is dated October 3, 2012.  (Pl.'s Opp., Ex. 2.)

determination that Stradtman believed himself to be a client of Charlson Bredehoft is not clearly erroneous.[4]

Judge Anderson's legal conclusion that an attorney-client relationship existed in April 2012 is not contrary to law.  As noted, Stradtman was a client of Charlson Bredehoft.  Defendants' motion sought to compel communications between Charlson Bredehoft and Stradtman discussing Stradtman's case during the attorney-client relationship.  Judge Anderson properly ruled that the documents were privileged and thus the motion to compel was properly denied.

## IV. Conclusion

For the foregoing reasons, Defendants' motion will be denied.  An appropriate order will issue.

|  |  |
|---|---|
| May 21, 2015<br>Alexandria, Virginia | /s/<br>James C. Cacheris<br>UNITED STATES DISTRICT COURT JUDGE |

---

[4] Judge Anderson's determination is not undermined by the lack of a declaration from Stradtman, in opposition to the motion to compel, detailing when he entered into an attorney-client relationship.  Though a declaration would have made resolution of this issue much simpler, its absence is not dispositive on the question of intent to form an attorney-client relationship.