IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

STEPHEN M. STRADTMAN,               )
                                    )
     Plaintiff,                     )
                                    )
          v.                        )     1:14cv1289 (JCC/JFA)
                                    )
REPUBLIC SERVICES, INC.,            )
*et al.*,                           )
                                    )
     Defendants.                    )

# M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants Republic Services, Inc., Republic Services of Virginia, LLC, and Ronald Krall's (collectively "Defendants") Motion for Attorney Fees and Costs. [Dkt. 179.] For the following reasons, the Court will deny the motion.

## I. Background

The facts of this case are well-known to the Court. (*See* 6/11/15 Mem. Op. [Dkt. 174] at 1-10.) As relevant here, Stephen Stradtman ("Stradtman" or "Plaintiff") filed a three-count complaint against Defendants in the Circuit Court of Fairfax County, Virginia. (Am. Notice of Removal [Dkt. 8] at 2.) Stradtman alleged: (1) tortious interference with contractual relations and business expectancies against all Defendants (Compl. [Dkt. 8-3] ¶¶ 121-40); (2) common law

1

conspiracy against all Defendants (*id.* ¶¶ 141-49); and (3) negligent retention of employees (Ronald Krall) against the two Republic Defendants (*id.* ¶¶ 150-70).  Defendants removed the case to this Court and subsequently moved to dismiss the Complaint.  (Am. Notice of Removal; Defs.' Mot. to Dismiss [Dkt. 4].)  The Court granted the Defendants' motion in part, dismissing the conspiracy and negligent retention claims. (11/25/14 Mem. Op. [Dkt. 14] at 16.)  Mindful that dismissal under Federal Rule of Civil Procedure 12(b)(6) is disfavored, the Court denied the motion as to the tortious interference claim so as to develop a record for the Court to consider the claim on its merits. (*Id.* at 13.)

Stradtman alleged Defendants tortiously interfered with contractual rights regarding his former employment as the Chief Executive Officer ("CEO") of Otto Industries North America, Inc. ("Otto"), a trash and recycling cart manufacturer. (Compl. ¶¶ 121-40.)  According to Stradtman, Defendants diverted their business away from Otto in an attempt to force his resignation.  (*Id.* ¶¶ 127-28.)  This pressure to resign, Stradtman claimed, was in retaliation for a discrimination lawsuit that Stradtman's wife had filed against Defendants. (*Id.*)  Stradtman believed he had no choice but to resign because of Defendants' improper methods and interference with his employment at Otto.  (*Id.* ¶ 133.)

2

After the close of a contentious discovery period, Defendants moved for summary judgment.  (Defs.' Mot. for Summ. J. [Dkt. 142].)  The Court granted the motion from the bench and memorialized its reasoning in a written Memorandum Opinion. (6/11/15 Mem. Op. [Dkt. 174].)  The Court held Stradtman's claim failed for three reasons.  First, Stradtman failed to prove that Defendants induced a third party, Otto, to terminate his employment contract.  (*Id.* at 12.)  Second, Stradtman's voluntary resignation broke the causal chain between any supposed interference by Defendants and the termination of his employment with Otto.  (*Id.*)  Third, Stradtman was not constructively discharged or forced to resign.  (*Id.*)

Defendants now move for attorneys' fees and costs pursuant to 28 U.S.C. § 1927, Federal Rule of Civil Procedure 54, and the Court's inherent authority.  (*See generally* Defs.' Mot. for Attorney Fees and Costs [Dkt. 179].)  Defendants believe they are entitled to fees and costs because Stradtman and his counsel "brought and continued to litigate this case long after they must have known that there was no good faith basis to do so."  (Defs.' Mem. in Supp. [Dkt. 180] at 1.)  Stradtman and his counsel oppose the motion, arguing there was no bad faith in prosecuting this case.  (*See generally* Pl.'s Opp. [Dkt. 198].)  Having been fully briefed and argued, this motion is ripe for disposition.

3

## II. Legal Standard

### A. 28 U.S.C. § 1927

Section 1927 of Title 28 of the U.S. Code states:

Any attorney or other person admitted to
conduct cases in any court of the United
States or any Territory thereof who so
multiplies the proceedings in any case
unreasonably and vexatiously may be required
by the court to satisfy personally the
excess costs, expenses, and attorneys' fees
reasonably incurred because of such conduct.

Section 1927 is concerned with remedying abuse of

court process.  If an attorney needlessly multiplies a

proceeding, then he may be liable for the costs of such

extraneous litigation.  *See Roadway Express, Inc. v. Piper*, 447

U.S. 752, 756 n.3 (1980) (noting that § 1927 provides only for

*excess* costs incurred as a result of multiplication, not the

entire cost of the litigation).  The statute "'does not

distinguish between winners and losers, or between plaintiffs

and defendants.  The statute is indifferent to the equities of a

dispute and to the values advanced by the substantive law.'"

*DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) (citing

*Roadway Express*, 447 U.S. at 762).  Thus, an attorney who files

a meritless claim may not be sanctioned under § 1927 if he does

not "multiply the proceedings." *DeBauche*, 191 F.3d at 511.

Likewise, an attorney who wins a substantial verdict on a

meritorious claim may still face sanctions if he does engage in

such conduct.  *Id.*  Bad faith on the part of the attorney is a precondition for fees and costs under § 1927.[1]  *McKenzie v. Norfolk S. Ry. Co.*, 497 F. App'x 305, 312 (4th Cir. 2012); *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012).  Awarding sanctions under § 1927 lies within the sound discretion of the district court.  *Collins v. Dollar Tree Stores*, No. 2:09cv486, 2010 WL 9499078, at *4 (E.D. Va. May 28, 2010).

### B. Court's Inherent Authority

In addition to the authority granted under 28 U.S.C. § 1927, this court also possesses "the inherent authority in appropriate cases to assess attorneys' fees and impose other sanctions against a litigant or a member of the bar who has 'acted in bad faith, vexatiously, wantonly, and for oppressive reasons.'"  *Williams v. Family Dollar Servs., Inc.*, 327 F. Supp. 2d 582, 585 (E.D. Va. 2004) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)).  "The bad faith exception for the award of attorneys' fees is not restricted to cases where the

---

[1] Defendants cite *Sanford v. Virginia*, 689 F. Supp. 2d 802 (E.D. Va. 2010) as standing for the proposition that the Fourth Circuit had suggested, but not decided, that bad faith is required for sanctions under § 1927.  (Defs.' Mem. in Supp. at 11.)  However, in *McKenzie* the Fourth Circuit rejected *Sanford*'s interpretation of its case law.  *McKenzie*, 497 F. App'x at 312 ("*Sanford* asserts, however, that our decisions merely state this proposition [that bad faith is required under § 1927] in dicta because a finding of bad faith was not necessary to reach our conclusions in those cases.  We disagree.").

action is filed in bad faith.  [B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Roadway Express, Inc.*, 447 U.S. at 766 (citation and internal quotation marks omitted).  This Court also has the power to invoke its inherent authority to sanction an attorney's conduct "even if procedural rules exist which sanction the same conduct." *Chambers*, 501 U.S. at 49.

Under both § 1927 and the court's inherent power, the burden of demonstrating an entitlement to attorneys' fees rests on the moving party.  *Morris v. Wachovia Secs., Inc.*, 448 F.3d 268, 284 (4th Cir. 2006).

### III. Analysis

#### A. Fees and Costs Under 28 U.S.C. § 1927

Before deciding the merits of this action, the Court must determine, without the benefit of briefing from either party, whether § 1927's bad faith requirement is the "more stringent" subjective standard or a less stringent objective standard.  In *Salvin v. American National Insurance Co.*, this Court canvassed the relevant case law and found that several circuits have ruled that the objective standard of bad faith should be used to determine an award of attorneys' fees and costs under § 1927.  No. 2:06cv264, 2007 WL 1097891, at *3-4 (E.D. Va. Apr. 11, 2007) (collecting cases).  Although the Fourth Circuit had not addressed the distinction between the

objective and subjective standard, the *Salvin* court concluded that the Fourth Circuit had "indicated" that § 1927 only requires an objective showing of bad faith. *Id.* at *3 (citing *Fahrenz v. Meadow Farm P'ship*, 850 F.2d 207, 211 n.1 (4th Cir. 1988) for the proposition that Fed. R. Civ. P. 11 required an objective bad faith showing, upholding Rule 11 sanctions, and stating sanctions would be also be appropriate under § 1927). Therefore, the *Salvin* court applied the objective standard of bad faith in awarding attorneys' fees under § 1927. *Salvin*, 2007 WL 1097891, at *4, *10. On appeal, the attorney argued § 1927 required a subjective showing of bad faith. *Salvin v. Am. Nat'l Ins. Co.*, 281 F. App'x 222, 225 (4th Cir. 2008). The Fourth Circuit declined to decide which standard is required under § 1927 because the factual findings supported that the attorney acted in bad faith, even assuming the more stringent subjective standard applied. *Id.*

Two years later, this Court was again faced with the question of what standard – objective or subjective – governs the bad faith inquiry under § 1927. *Collins*, 2010 WL 9499078, at *3-4. Based on its reasoning in *Salvin*, this Court applied the objective standard. *Id.* The Fourth Circuit has not issued any definitive pronouncement regarding the appropriate standard in a post-*Salvin* case. In light of the case law and this Court's sound reasoning in *Salvin*, the Court will apply an

objective standard in determining whether § 1927 sanctions are warranted here.

Objective bad faith does not require malice or ill will; "reckless indifference to the law will qualify. If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Collins*, 2010 WL 9499078, at *3 (citing *Dal Pozzo v. Basic Machinery Co.*, 463 609, 614 (7th Cir. 2006)). Defendants claim that Stradtman's counsel was "well aware" of the facts as set forth in the Court's Memorandum Opinion granting summary judgment. (Defs.' Mem. in Supp. at 13.) Specifically, Defendants argue that Stradtman and his counsel "long knew" that (1) Defendants did not induce Otto to terminate his employment contract or force Stradtman's resignation; (2) that Stradtman voluntarily resigned; (3) that Stradtman's working conditions at Otto were not intolerable; (4) that Stradtman's voluntary actions were part of a scheme to obtain money from Otto and manufacture a claim against Defendants; and (5) there was no factual support for many of the allegations of retaliation made against Defendants in Stradtman's complaint. (Defs.' Mem. in Supp. at 2.) The Court addresses each of these contentions in turn.

### 1. Whether Defendants Induced Otto to Force Stradtman Out and Stradtman's Voluntary Resignation

Turning to the first two issues raised by Defendants, namely, whether Defendants induced Otto to terminate Stradtman's employment and Stradtman's voluntary resignation, Stradtman has never denied that he resigned from Otto.  (Pl.'s Mem. in Supp. at 7.)  His position in this litigation has been that his resignation cannot be fairly characterized as truly voluntary because of the wrongful conduct of Defendants, which was directed at Stradtman and Otto, his employer.  (*Id.*) Stradtman's theory of the case was as follows: Republic diverted business from Otto in an effort to coerce Stradtman to convince his wife to drop her lawsuit against Republic; as a result of Republic's conduct, Stradtman concluded his position with Otto was untenable and that considering the circumstances, he had no choice but to resign; and the facts would support a showing of constructive discharge and that Republic would be found liable for tortious interference with Stradtman's contract with Otto. (*Id.* at 2.)  For Stradtman's theory to succeed, he had two difficult hurdles to surmount: persuading the Court that constructive discharge is viable in Virginia, and then convincing the Court that constructive discharge can satisfy the elements of tortious interference with contract.  Though Stradtman ultimately could not convince this Court that the law

9

was otherwise, that does not mean that Stradtman's arguments

advocating for the change in the law were in bad faith, i.e.,

made for the purpose of running up Defendants' costs.

As one district court has noted, the Supreme Court of

Virginia has not yet ruled on constructive discharge as it

relates to a claim for wrongful termination by an at-will

employee. *Faulkner v. Dillon*, -- F. Supp. 3d --, No.

1:14CV00081, 2015 WL 1291411, at *3 (W.D. Va. Mar. 23, 2015).

The federal district courts in Virginia are split over whether

constructive discharge is recognized under Virginia law. *Id.*

(*comparing Gordon v. ArmorGroup N. Am., Inc.*, No. 1:10cv002

(JCC), 2010 WL 3418219, at *4 (E.D. Va. Aug. 27, 2010)

(rejecting constructive discharge), *and Gastyne v. Entrust,

Inc.*, No. 1:10cv271 (JCC), 2010 WL 3418235, at *11 (E.D. Va.

Aug. 24, 2010) (same), *with Wynne v. Birach*, No. 1:09cv15, 2009

WL 3672119, at *4 (E.D. Va. Nov. 3, 2009) (recognizing

constructive discharge), *and Johnson v. Paramont Mfg.*, LLC, No.

1:05CV00079, 2006 WL 2711830, at *6 (W.D. Va. Sept. 21, 2006)

(same)). Virginia trial courts have also reached different

conclusions on the issue, with many courts choosing to recognize

a constructive discharge claim under Virginia law. *Faulkner*,

2015 WL 1291411, at *4 (collecting cases). The Fourth Circuit

has declined to recognize a constructive discharge exception to

the employment-at-will doctrine, concerned that federal courts

10

would extend state law beyond any point recognized by Virginia law.  *Id.* (citing *Hairston v. Multi-Channel TV Cable Co.*, No. 95-2363, 1996 WL 119916 (4th Cir. Mar. 19, 1996)); *see also Grier v. Titan Corp.*, Nos. 97–1167, 97–1168, 1997 WL 467510, at *1 n.1 (4th Cir. Aug. 15, 1997) (citing *Hairston* as stating Virginia law does not provide a cause of action for constructive discharge).  In light of such disagreement in the case law, it would not be unreasonable for Stradtman and his counsel to believe that constructive discharge for an at-will employee may be a viable legal theory in Virginia.

Even assuming constructive discharge is a viable legal theory in Virginia, Stradtman also had to persuade the Court that constructive discharge is sufficient to show intentional interference with his contract with Otto.  Stradtman's argument on this point rested on two cases: *Taylor v. CNA Corp.* and *Wilson v. Modjadidi*.  Among other claims, the plaintiff in *Taylor*, who had voluntarily resigned, brought a claim for tortious interference with business expectancy.  782 F. Supp. 2d 182, 204 (E.D. Va. 2010).  This Court dismissed the claim.  *Id.* "It is axiomatic that a plaintiff cannot sustain a claim of tortious interference with business expectancy when he willingly surrendered his right to those expectancies." *Id.*  However, this Court qualified that language.  "Of course, if conditions at CNA had become so intolerable that Taylor [was] effectively

11

left no practical choice other than quitting, then it would be unfair to characterize his decision as willingly made." *Id.* Because the plaintiff had alleged the same facts in his constructive discharge count, which the Court had already dismissed, the plaintiff in *Taylor* could not establish tortious interference based on a constructive discharge theory on the facts of his case. *Id.*

In *Wilson*, the plaintiff had an at-will employment contract with a family dentistry practice.  No. CL06-4670, 2008 WL 5539824, at *1 (Va. Cir. Ct. Jan. 23, 2008).  She alleged that one of the dentists subjected to her to such severe and pervasive harassment that she had no choice but to quit.  *Id.* She then sued the dentist for tortious interference with her employment contract with the dentistry group.  *Id.*  The Norfolk County Circuit Court found the plaintiff had alleged sufficient information about the defendant's intention to force her to resign and made specific threats evidencing those intentions. *Id.* at *3.  "Because such threats are a type of conduct that will support a cause of action for tortious interference," the court overruled the demurrer.  *Id.*

In ruling on summary judgment, this Court assumed, without deciding, that an at-will employee can maintain a tortious interference claim on a constructive discharge theory. (6/11/15 Mem. Op. at 19 n.9 (noting that the Supreme Court of

12

Virginia has not resolved this issue).)  Nonetheless, this Court distinguished *Wilson* and *Taylor* on their facts.  Unlike the plaintiff in *Wilson*, "[t]here is no evidence in the record that Defendants specifically threatened Otto to force Stradtman's resignation, that they openly bragged about causing Stradtman to lose his employment, or that they had anything remotely to do with Stradtman's separation."  (6/11/15 Mem. Op. at 19.) Therefore, Stradtman could not establish a causal chain between any of Defendants' actions and his ultimate resignation sufficient to introduce any genuine issue of fact on whether Defendants tortiously interfered with his Otto contract.  And with respect to *Taylor*, this Court found that Stradtman's working conditions were not so intolerable that he could not continue working at Otto, and thus his decision to leave Otto was willingly made.  (6/11/15 Mem. Op. at 21.)

     Both of these determinations are fact-specific determinations that could only be made after a complete record before the Court.  While the legal support underlying Stradtman's theory may have been thin, the Court is wary to penalize an attorney for undertaking an effort to advance the law, especially absent a concrete showing that such arguments were made with the intent to harass the opposing party.  *See Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 794 (7th Cir. 1983) (stating plaintiff's actions did not

"multiply" proceedings where issue presented was one of first impression); *see also McMahan v. Adept Process Servs., Inc.*, 279 F.R.D. 356, 361-62 (E.D. Va. 2011) ("While the existing precedent did not support such counsel's position 'on all fours,' there is no existing precedent which is contrary to Plaintiffs' position based upon the particular facts of this case. Perhaps the lack of such precedent suggests the lack of a logical factual basis for counsel's position, but a lack of logic is a highly questionable basis for the imposition of sanctions.").

In addition to attacking Stradtman's legal theory as made in bad faith, Defendants also argue that Stradtman's counsel misconstrued the facts in this litigation.  Defendants cite to several emails in support, including one email sent from Stradtman to his counsel before the complaint was filed in which he told her that the Otto board wanted him to stay.  (Defs.' Reply [Dkt. 202] at 3; Defs.' Reply, Ex. A.)  Though a close call, the Court finds that these emails are not evidence of bad faith.  Stradtman believed that he had a fiduciary duty to resign once he learned of potential problems with Republic. (Pl.'s Opp'n at 10-11.)  Such arguments do not depend on whether the Otto board wanted him to stay, because the Court, and not the Otto board, ultimately determines whether such a duty existed.  It was not bad faith for Stradtman's counsel to argue

that if he remained as CEO, he would be in breach of his
fiduciary duties to Otto, even if the board of directors
interpreted Stradtman's fiduciary duties differently.
Therefore, the emails do not show that Stradtman's counsel
multiplied the litigation in bad faith, and thus do not support
an award of fees and costs under § 1927.

**2.    Whether Stradtman's Working Conditions Were
       Intolerable**

Defendants also allege that Stradtman and his counsel
knew from the beginning of this suit that Stradtman's working
conditions could not be classified as intolerable such that they
would support a claim for constructive discharge.  (Defs.' Mem.
in Supp. at 5-6.)  In ruling on the motion to dismiss, the Court
found that Stradtman's complaint alleged that Stradtman was left
with no other options but to resign.  (11/25/14 Mem. Op. at 10.)
The claim was allowed to proceed in part so the Court could
consider a fully developed record at summary judgment as to
Stradtman's working conditions.  (*Id.* at 12-13.)  When the
record was fully developed, it was clear to the Court that the
working conditions at Otto were anything but intolerable; in
fact, in the Court's view, Stradtman's work environment at Otto
might even be desirable.  (*See* 6/11/15 Mem. Op. at 21.)

In essence, Defendants argue that because Stradtman
was unable to defeat summary judgment on this point, then there

was never any good faith basis to bring the lawsuit in the first place.  Losing a summary judgment motion because of lack of factual support does not show that Stradtman's counsel pursued a path that a reasonable attorney would have known to be unsound. In fact, if the Court were to accept that alone as evidence of bad faith, every party who has had their motion for summary judgment granted would have a basis for fees and costs against the losing party for multiplying the proceedings, a result that runs counter to the statute's purpose of preventing wasteful litigation and the American Rule that each party generally bears its own expenses.  *See Bakker v. Grutman*, 942 F.3d 236, 237 (4th Cir. 1991) (noting that § 1927 provides an exception to the American Rule).  Put another way, just because a party cannot overcome a motion for summary judgment does not mean that the case is flawed from the outset.  Nor does it mean that, as the record develops and it becomes clear to a neutral observer that one side has a stronger likelihood of success, an attorney should cease trying to marshal the facts and the law to zealously advocate on behalf of his client.  Though the facts here were not in Stradtman's favor, the Court is mindful that its job in assessing whether costs and fees under § 1927 are appropriate is not whether the litigation was ultimately successful or whether the complaint was frivolous, but whether counsel's actions were so far beyond the pale as to constitute

nothing more than driving up Defendants' litigation costs.
Though the merits of the case were not strong to begin with and
look even weaker in hindsight, the Court cannot say that there
has been a showing that Stradtman's counsel continued to
litigate this case merely as a way to run up costs. *Great
Steaks*, 667 F.3d at 522-23 ("[Defendant's] first contention
concerning the weaknesses of the [plaintiff's] case does not
fall within the purview of § 1927, which 'focuses on the conduct
of the litigation and not on its merits.'") (citing *DeBauche*,
191 F.3d at 511).  Therefore, this ground also does not support
an award of fees and costs under § 1927.

### 3. Stradtman's Voluntary Actions Were Part of a Scheme to Obtain Money from Otto and Manufacture a Claim Against Defendants

Defendants argue that Stradtman fabricated his claim
from the beginning and that his counsel was complicit in that
scheme.  (Defs.' Mem. in Supp. at 6.)  Defendants offer the
following in support: Stradtman sought and was hired for another
CEO position, unbeknownst to Otto; Stradtman negotiated a
$270,000 payment from Otto just four days after accepting the
new position; and Stradtman sent an email to his counsel in
which he states he would "need to try to force [his]
termination."  (Defs.' Mem. in Supp. at 6-7.)  Defendants also
cite to additional emails they received during discovery.  One
is an email from Stradtman to his wife in which he referred to

17

his attempt to "trap" Republic's procurement manager into making a damaging statement. (Defs.' Mem. in Supp. at 8-9.) The second is a series of emails from Stradtman to his counsel in March 2012. Stradtman writes: "This is the email I would like to send to Ron Krall to accomplish a few objectives which I think could be effective. I am trying to link his behavior to the issue at hand. I am certainly open to your comments." (Defs.' Mem. in Supp. at 8.) Stradtman's counsel provided comments on the draft email and authorized him to send it. (*Id.*)

Though on summary judgment the Court found that these facts were fatal to Stradtman's claim, the Court does not believe they rise to the level of demonstrating that Stradtman's counsel acted in bad faith in continuing to litigate the case. As stated before, Stradtman's position throughout this entire litigation was that he was constructively discharged from his job at Otto. Looking for a new job while still employed at a job where Stradtman believed the working conditions were intolerable does not run afoul of this position. "Forcing" his termination is also consistent with this litigation position, as Stradtman's claim would have been on stronger legal footing had Otto terminated him. While accepting a $270,000 payment from Otto after accepting another job reflects poorly on Stradtman, there is no allegation that Stradtman's counsel encouraged

Stradtman to seek such a payment.  Similarly, the "trap" email reflects Stradtman's unfortunate word choice.  Try as they might, attorneys cannot control their clients.  Though on one view the "trap" email paints Stradtman in an unflattering light, the email also could be read as an over-zealous client who strongly believes he has been harmed and is trying to build a case to right what he perceives is a serious wrong.  Therefore, Stradtman's use of the word "trap" does not exhibit objective bad faith on the part of Stradtman's counsel.[2]

Finally, the email from Stradtman to his counsel discussing a draft email to Krall could be read as Stradtman laying the groundwork for his eventual lawsuit.  It could also be viewed as a misguided attempt to create a paper trail of events as they were happening.  As the text of the email notes, Stradtman's wife's lawsuit was on-going at the time, and Stradtman's counsel in this action was representing Stradtman's wife in her lawsuit against Republic.  It does not strain credulity to believe that counsel would want to review an email drafted by her client's husband to the opposing party in the midst of ongoing litigation.  Therefore, like the "trap" email,

---

[2] Defendants note that Stradtman's counsel knew this email existed and sought to prevent its production, though it is unclear at what point in time Stradtman's counsel was made aware of this email.  (*See* Defs.' Mem. in Supp. at 8 n.10.)

this email and knowledge of it does not rise to the level of objective bad faith.

Put simply, while one view of these facts and emails cast Stradtman's motivations for bringing this lawsuit into serious doubt, it does not follow that such motivations are attributable to Stradtman's counsel.  Though the Court found these facts determinative in ruling on summary judgment, these facts standing alone do not show that a reasonable attorney acting as Stradtman's counsel would not have continued to litigate this case.  Therefore, this ground does not provide a basis for fees and costs.

> **4.   Whether There Was Factual Support for Allegations of Retaliation in Stradtman's Complaint**

Defendants argue that discovery proved there was never a basis for many of the other allegations about Republic's conduct made by Stradtman in the complaint.  (Defs.' Mem. in Supp. at 9.)  Defendants do not articulate how these statements are actionable under § 1927; the Court assumes that Defendants' theory is that the statements in the complaint multiplied the litigation in some way, most likely because Defendants had to investigate whether the statements were true.[3]

---

[3] Defendants' arguments seem like Rule 11 sanctions dressed in § 1927's clothing, as Defendants are attacking specific allegations in the complaint as having no basis in fact. Federal Rule of Civil Procedure 11 governs pleadings, motions, and other papers signed by attorneys and presented to the court.

"Section 1927 focuses on the conduct of the litigation and not on its merits." *DeBauche*, 191 F.3d at 511.   In *DeBauche*, the Fourth Circuit held that as a matter of law, the filing of a single complaint cannot be held to have multiplied the proceedings unreasonably and vexatiously and therefore § 1927 could not be employed to impose sanctions.   *Id.*   Similar logic applies here.   Though Defendants argue that the allegations were "critical" to the case, Defendants were able to discern whether those allegations had merit during Stradtman's deposition.   To be sure, Defendants would have deposed Stradtman regardless of whether those allegations were contained in the complaint.   *See Bakker*, 942 F.3d at 242 ("Section 1927 was intended to sanction conduct Rule 11 does not reach, *i.e.*, protracting or multiply the litigation to run up the opposing party's costs, remedied by awarding *excess* attorneys' fees and costs.") (emphasis in original).   Therefore, these "critical

---

By filing a pleading, motion, or other paper with the court, the attorney certifies to the best of his information and belief, formed after an inquiry reasonable under the circumstances, "that the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).   In any event, Defendants would not be successful even if the Court were to construe this ground as a motion for Rule 11 sanctions.   Defendants have put forward no evidence to show that Stradtman's counsel did not undertake a reasonable pre-filing investigation nor have they put forward any evidence that would tend to show objectively that Stradtman's counsel did not believe the statements could be verified during discovery.

allegations" could not be said to have unnecessarily multiplied the litigation and as such do not form a basis for fees and costs under § 1927.[4]

## B. Court's Inherent Power

A court's inherent power allows district courts to sanction attorneys who inhibit courts' ability "to manage their own affairs." *Royal Ins. V. Lynnhaven Marine Boatel, Inc.*, 216 F. Supp. 2d 562, 567 (E.D. Va. 2002).  The power allows a court to sanction an attorney's actions taken in bad faith, wantonly, oppressively, or vexatiously.  *Id.*  The power "ought to be exercised with great caution," in circumstances such as those involving "the very temple of justice [being] defiled."  *Id.* (citations omitted).  The inherent power covers every type of litigation misconduct.  *Sanford v. Commonwealth of Va.*, 689 F. Supp. 2d 802, 814 (E.D. Va. 2010), *abrogated on other grounds by McKenzie v. Norfolk S. Ry. Co.*, 497 F. App'x 305 (4th Cir. 2012).  Though the scope of the court's inherent power covers more than just rule or statute-based misconduct, the level of misconduct required "is almost always something more egregious than that required for other types of sanctions."  *Id.*  Like attorneys' fees and costs under § 1927, a showing of bad faith

---

[4] Indeed, Defendants own record citations reveal that questions about these allegations comprised at most five pages of more than three hundred pages of deposition testimony in just one of Stradtman's two depositions.  (*See* Defs.' Mem. in Supp. at 9-10.)

is required, though like § 1927 it is unclear whether a
subjective or objective bad faith standard applies.  *See Blair
v. Shenandoah Women's Center, Inc.*, 757 F.2d 1435, 1438 (4th
Cir. 1985) (stating that there were sufficient facts to support
a finding of subjective bad faith by plaintiff's attorney in
prosecuting the case).

      Regardless of the bad faith standard required under
the court's inherent power, Defendants have failed to meet their
burden that they are entitled to attorneys' fees and costs under
§ 1927.  It follows that Defendants have failed to make a
showing that this Court's inherent powers are necessary to
rectify a litigation abuse.  Therefore, the Court declines to
order sanctions under its inherent power.

### IV. Conclusion

      For the foregoing reasons, the Court will deny the
motion.  An appropriate order will issue.


                          /s/
                    _____
August 5, 2015             James C. Cacheris
Alexandria, Virginia     UNITED STATES DISTRICT COURT JUDGE